United States District Court
Southern District of Texas
**ENTERED**
September 04, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ELIZABETH J. MARCHI § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 3:17–CV–00360 |
| § | |
| NANCY A. BERRYHILL, ACTING § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Elizabeth J. Marchi ("Marchi") seeks judicial review of an administrative decision denying her disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*

All dispositive pretrial motions in this case have been referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Dkt. 6. Before the Court are competing Motions for Summary Judgment filed by Marchi and Defendant Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration (the "Commissioner"). Dkts. 8, 9. Having considered the motions, responsive briefing, and applicable law, the Court RECOMMENDS that Marchi's Motion for Summary Judgment (Dkt. 8) be DENIED, the Commissioner's Motion for Summary Judgment (Dkt. 9) be GRANTED, and the decision of the Administrative Law Judge ("ALJ") be AFFIRMED.

## I. BACKGROUND

Marchi filed a claim for social security disability benefits under Title II of the Act, alleging disability as of January 18, 2013. Marchi's applications were initially denied, and denied again upon reconsideration. Subsequently, an ALJ held a hearing and found Marchi was not disabled. Marchi filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final. This appeal followed.

## II. APPLICABLE LAW

Section 405(g) of the Act governs the standard of review in disability cases. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance." *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987) (citation omitted). "Judicial review is to be deferential without being so obsequious as to be meaningless." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

"[A] claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (citation, internal quotation marks, and emphasis omitted).

To determine if a claimant is disabled, the ALJ uses a sequential, five-step approach:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

"The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond*, 892 F.3d at 817 (citation omitted). "Before reaching step four, the Commissioner assesses the claimant's residual functional capacity ('RFC'). The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record. The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work." *Kneeland*, 850 F.3d at 754 (citations and internal quotation marks omitted).

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). *Post hoc* rationalizations for an agency decision are not to be considered by a reviewing court. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). "The reviewing court may not reweigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. Conflicts in the evidence are for the Commissioner, not the courts, to resolve." *Pennington v. Comm'r of Soc. Sec. Admin.*, No. 3:16-CV-230, 2017 WL 4351756, at *1 (S.D. Tex. Sept. 29, 2017) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).

## III. THE ALJ'S DECISION

The ALJ found at step one that Marchi had not engaged in substantial gainful activity since January 18, 2013.

The ALJ found at step two that Marchi had the following severe impairments: axilla pain secondary to post-mastectomy pain syndrome and obesity.

At step three, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of step four, the ALJ assessed Marchi's RFC, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she cannot climb ladders, ropes, or scaffolds. She can do overhead reaching occasionally.

Dkt. 4-3 at 16. At step four, based on this RFC, the ALJ found that Marchi is capable of performing past relevant work as a personnel recruiter because "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.* at 19. Accordingly, the ALJ determined that Marchi was not disabled under the Act and was not entitled to benefits.

## IV. DISCUSSION

This appeal raises three issues: (1) whether the ALJ erred in determining Marchi's RFC; (2) whether the ALJ erred in evaluating Marchi's testimony; and (3) whether the ALJ erred in determining Marchi is capable of performing past relevant work. The Court addresses each issue in turn.

4

A.   SEDENTARY RESIDUAL FUNCTIONAL CAPACITY DETERMINATION

**Bilateral Manual Dexterity:** Marchi claims the ALJ committed reversible error because the ALJ "failed to adequately take [Marchi's] reduced bilateral manual dexterity into account in formulating [Marchi's] RFC." Dkt. 8 at 5. Marchi cites to a specific page from the ALJ's decision to support her assertion that she "further testified that treatment for pain was not effective and that all these factors greatly inhibit her bilateral manual dexterity." *Id.* However, the referenced page from the ALJ's decision makes no mention whatsoever of "bilateral manual dexterity." *See* Dkt. 4-3 at 17. Although it is not the duty of the Court to comb through the record to find support for Marchi's argument, the Court did just that and found no mention of any dexterity issues in the medical records or Marchi's social security filings. Moreover, Marchi did not present any evidence or argument regarding dexterity limitations at the hearing before the ALJ.

In sum, Marchi has not cited any objective medical evidence in the record to support a limitation based on her alleged diminished bilateral manual dexterity. Given this fact, the ALJ did not commit reversible by failing to include dexterity based limitations in her RFC assessment. *See, e.g., Corpuz v. Astrue*, No. CV H-12-0451, 2012 WL 12872457, at *3 (S.D. Tex. Dec. 4, 2012), (finding "[t]he ALJ did not commit reversible error" where the claimant "cites no objective medical evidence in the record to support such a limitation"), *report and recommendation adopted*, 2012 WL 12872716 (S.D. Tex. Dec. 21, 2012); *Chess v. Astrue*, No. CIV.A. H-10-0607, 2011 WL 11048249, at *6 (S.D. Tex. Feb. 2, 2011) (finding the ALJ did not err where the claimant presented "no evidence that [he] had any . . . dexterity issues") (citation omitted).

**Dr. Ross Keiser's Opinion:** Marchi next contends that the ALJ improperly rejected the opinion of Ross E. Keiser, Ph.D. ("Dr. Keiser"), an examining psychologist, and "impermissibly substituted her own opinion." Dkt. 8 at 6. Specifically, Marchi argues:

> [T]he ALJ rejected the findings most probative and most favorable without stating what clinical findings are lacking, and does not specify what other evidence in the record is inconsistent with the evidence favorable to plaintiff. While the ALJ does mention plaintiff's [activities of daily living] in assessing the value of Dr. Kaisers [sic] opinion, the ALJ does not consider whether the plaintiff's ability to perform certain activities in her personal life can logically relate to the ability to sustain competitive related activities.

*Id.* Marchi's characterization of the ALJ's treatment of Dr. Keiser's opinion is conclusory and inaccurate. The ALJ thoroughly discussed Dr. Keiser's clinical findings, noting that based on his examination of Marchi, Dr. Keiser found that Marchi has "no gait or posture problems," the mental status examination revealed "no deficits of any kind," and she "does not have a mental impairment." Dkt. 4-3 at 18. The ALJ then juxtaposed Dr. Keiser's objective clinical findings with his opinion regarding Marchi's reasoning ability and impairments in personal and occupational adjustment. The ALJ explained:

> Dr. Keiser is a psychologist whose opinion is that the claimant does not have a mental impairment, and has no deficits on the mental status examination. He nevertheless opined her insomnia results in limitations in reasoning ability and impairments in personal and occupational adjustment, *as described by the claimant*, who described tension, worry, and a short temper. The undersigned finds this conclusion internally inconsistent with regard to his findings, and inconsistent with the claimant's statements regarding her daily activities . . . . It is given no probative weight.

*Id.* at 19 (emphasis added). In simple terms, the ALJ accepted Dr. Keiser's objective clinical findings, but rejected the purported limitations in reasoning ability and impairments in personal and occupational adjustment because they were supported only by Marchi's self-

6

reports and contradicted by Dr. Keiser's objective clinical findings. The ALJ properly carried out her duty to resolve conflicts in the evidence, and it is not this Court's job to reweigh such evidence. *See Pennington*, 2017 WL 4351756, at *1 (citation omitted).

**Social Security Ruling 96-8p:** Marchi also contends the ALJ "failed to describe how the evidence supported each conclusion, and failed to discuss [her] ability to perform sustained work activity in an ordinary work setting on a regular and continuing basis," as required by Social Security Ruling ("SSR") 96-8p. Dkt. 8 at 7. SSR 96–8p requires that an RFC assessment include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8P, 1996 WL 374184, at *7 (July 2, 1996); *see also Bryant v. Astrue*, 272 F. App'x 352, 356 (5th Cir. 2008). Furthermore, the ALJ's RFC assessment "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* However, "[a] specific finding on the ability to maintain employment is not required, where there is no evidence that the ability to maintain employment was compromised, or no evidence that the ALJ misunderstood that the definition of 'residual functional capacity' includes the understanding that the claimant can maintain his assigned level of activity." *White v. Astrue*, No. 4:10-CV-426-A, 2011 WL 4907377, at *6 (N.D. Tex. Oct. 14, 2011) (citing *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003)).

Here, Marchi simply quotes portions of SSR 96–8p and argues that the ALJ did not comply. Marchi provides no indication of how the ALJ's conclusions were deficient, nor does she cite any factual evidence that the ALJ did not consider. Contrary to Marchi's vague argument, the ALJ thoroughly discussed the evidence upon which his RFC was based: the objective medical evidence; Marchi's testimony; and relevant medical opinions. Further, the ALJ found "that [Marchi] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she cannot climb ladders, ropes, or scaffolds. She can do overhead reaching occasionally." Dkt. 4-3 at 16. 20 CFR 404.1567(a) states:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

A relevant Social Security Administration opinion letter further explains:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83–10, 1983 WL 31251 at *5. In sum, the ALJ's RFC determination addresses Marchi's ability to carry out prospective job duties, as well as the frequency with which she could perform the activities described during an eight hour workday, as required by SSR 96–8p. While Marchi may disagree with the ALJ's conclusion, the ALJ's opinion

8

sufficiently referenced the supporting evidence and appropriately explained the rationale for her decision in accordance with SSR 96–8p. *See Ybarra v. Colvin*, No. 4:13-CV-3720, 2015 WL 222330, at *9 (S.D. Tex. Jan. 14, 2015) (rejecting similar argument and finding RFC determination "was in accordance with SSR 96–8p and supported by substantial evidence").

**Medically Determinable Impairments:** Marchi contends that "[t]he Regulations require that if a severe impairment exists [at step 2], all medically determinable impairments—whether severe or not—must be considered in the remaining steps of the sequential analysis." Dkt. 8 at 8 (citing 20 C.F.R. §§ 404.1523, 416.923). Relying on this understanding of the law, Marchi first argues that because the ALJ found that her axilla pain secondary to post-mastectomy pain syndrome and obesity qualified as severe impairments, the ALJ was required to consider her additional non-severe impairments (diabetes, chronic fatigue syndrome, back pain, leg numbness, insomnia, and anxiety) in determining her RFC. Marchi then argues that the ALJ compounded her error by "fail[ing] to reflect all of plaintiff's medically determinable impairments" in the hypothetical question she posed to the vocational expert. *Id.* at 8.

Marchi's argument fails because it is based on a flawed interpretation of the law. The regulations cited by Marchi actually provide:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, we will consider the combined impact of the impairments throughout the disability determination process.

20 C.F.R. §§ 404.1523(c), 416.923(c). This language makes clear that an ALJ has the duty to consider the combined effect of alleged impairments to determine if a medically severe combination exists. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"). For example, if a claimant had impairments A (non-severe), B (non-severe), and C (non-severe), the regulations would require the ALJ to consider whether any combination of A, B, and C constitute a medically severe combination. If the ALJ found that A and B together constituted a medically severe combination, the regulations would require that the ALJ "consider the combined impact of . . . impairments [A and B] throughout the disability determination process." 20 C.F.R. §§ 404.1523(c), 416.923(c). However, the regulations would not require that the ALJ consider the impact of impairment C, because "only *impairments* found to be *medically severe* (singly or in combination) need be considered throughout the disability determination." *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 607 (E.D. Tex. 2009). Thus, as illustrated by this example, the ALJ was only required to consider axilla pain secondary to post-mastectomy pain syndrome and obesity—the impairments she based her step 2 determination on—throughout the disability determination. The ALJ did as she was required. Consequently, Marchi's argument that the ALJ failed to consider her non-severe impairments in determining her RFC, which is predicated on her incorrect interpretation of the law, must fail. Similarly, because the ALJ's application of the regulations was appropriate, the ALJ's hypothetical question to the vocational expert was not in error.

In sum, based on the record before the Court, the ALJ applied the proper legal standard in assessing Marchi's RFC and the RFC determination is supported by substantial evidence.

## B. CLAIMANT CREDIBILITY DETERMINATION

Marchi next contends that the ALJ failed to consider her non-exertional impairment of pain and failed to conduct a meaningful evaluation of her credibility regarding the same. In response, the Commissioner asserts that the "ALJ carefully evaluated [Marchi's] complaints and provided specific reasons for finding that [her complaints] were not entirely consistent with the objective medical evidence and other evidence." Dkt. 9 at 5.

When assessing complaints of pain, the ALJ must determine whether there is a medically determinable impairment that is capable of producing that pain. *See Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995).

> The regulations explain that, when the medical evidence reveals a medically determinable impairment that could produce pain, the analysis must focus on how the intensity and persistence of the pain limits the claimant's capacity for work. In order to evaluate the intensity and persistence of pain, the ALJ considers all available evidence, including medical history, medical signs and laboratory findings, statements of treating providers, and the subjective testimony of the claimant.

*Eovaldi v. Astrue*, 729 F. Supp. 2d 848, 862 (S.D. Tex. 2010) (citations omitted).

"Pain, in and of itself has been recognized as a disabling condition under the Act, but only where it is constant, unremitting, and wholly unresponsive to therapeutic treatment." *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983) (collecting cases). Not all pain is disabling, and the fact that a claimant experiences some pain or discomfort while working

11

"will not render [her] disabled." *Smith v. Astrue*, No. G-07-428, 2008 WL 3832516, at *21 (S.D. Tex. Aug. 15, 2008) (citation omitted).

It is well-settled in the Fifth Circuit that an ALJ's credibility findings of a claimant's subjective complaints are entitled to deference. *See Chrisner v. Astrue*, 249 F. App'x 354, 356 (5th Cir. 2007) (citing *Newton*, 209 F.3d at 459). The evaluation of a claimant's subjective symptoms is within the province of the ALJ, who has had the opportunity to observe the claimant. *See Hames*, 707 F.2d at 166.

Despite Marchi's claim that the ALJ failed to consider the effects of her pain and failed to meaningfully evaluate her credibility, the ALJ adequately addressed both when determining her RFC. In her decision, the ALJ reviewed and synthesized the entire medical record, including Marchi's sworn testimony. Utilizing the medical record and her testimony, the ALJ specifically discussed and considered: Marchi's daily activities; the location, duration, frequency, and intensity of her pain; factors that precipitated and aggravated her pain; her use of and the effectiveness of various pain relief medications; treatments, other than medication, she received for relief of her pain and other symptoms; measures other than formal medical treatment she used to relieve pain; and other factors concerning Marchi's functional limitations and restrictions due to pain.

Following the ALJ's review of the medical record and Marchi's sworn testimony, the ALJ determined that Marchi's determinable impairments could reasonably be expected to cause the alleged pain, but Marchi's statements concerning the intensity, persistence, and limiting effects of the pain was not consistent with the medical record. The ALJ further explained that Marchi "appear[ed] to have only intermittent pain . . . that d[id] not

completely preclude activities of daily living." Dkt. 4-3 at 18. Moreover, the ALJ concluded "[w]hile the claimant's impairments are severe in that they have more than a minimum effect on her ability to function, they are not totally disabling and do not preclude the performance of all substantial gainful activity." *Id.* at 19.

Altogether, the record presented here substantiates the ALJ's finding that Marchi is not disabled within the meaning of the Act. Although various facts related to pain contained in the record may, standing alone, slant in Marchi's favor (such as Marchi's testimony), this Court may not second-guess the ALJ's synthesis of the record by re-weighing that evidence. In other words, "[t]he ALJ considered all of the evidence and, using its discretion, afforded certain weight to certain evidence; if the ALJ found some of [Marchi's] evidence [(her testimony)] concerning the intensity, persistence and limiting effects of some symptoms to be lacking, this Court may not second-guess that judgment." *Rodriguez v. Colvin*, No. 5:16-CV-00053, 2017 WL 4354619, at *6 (S.D. Tex. Sept. 29, 2017) (citing *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015)).

Needless to say, the record does not disprove Marchi's claim that she experiences pain; however, the ALJ's determination was not that Marchi was pain-free, but rather that she may perform sedentary work with limitations on overhead reaching and climbing ladders, ropes, or scaffolds. Because the ALJ's determination is supported by substantial evidence, this Court may not disturb it.

Accordingly, the Court finds that the ALJ considered Marchi's pain and conducted an adequate analysis of her credibility regarding the same.

### C.  PAST RELEVANT WORK

Marchi next contends that the ALJ failed to apply the appropriate legal standard when assessing her ability to perform past relevant work. Specifically, Marchi argues that the ALJ's decision "omitted inquiry into, and a finding of fact as to, the physical and mental demands of plaintiff's past relevant work" in violation of SSR 82-62. Dkt. 8 at 11. SSR 82-62 "requires that where the ALJ has determined that a claimant retains the RFC to perform a past relevant job, the decision must contain the following specific findings: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation." *McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 835 (N.D. Tex. 2008) (citing SSR 82-62, 1982 WL 31386, at *4 (S.S.A. Nov. 30, 1981)).

Here, the ALJ found that Marchi's past work as a personnel recruiter, DOT# 166.267-010 (skilled, SVP6), qualified as past relevant work, and further found as follows:

> The vocational expert testified that a hypothetical person with the claimant's age, education, work experience and residual functional capacity could perform her past work as a personnel recruiter both as performed and as generally performed in the national economy. Thus, in comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as actually and generally performed in the national economy.
>
> In accordance with SSR 00-4p, the vocational expert's testimony is consistent with the Dictionary of Occupational Titles.

Dkt. 4-3 at 19. The vocational expert, Byron Pettingill ("Pettingill"), testified that he reviewed Marchi's file and Marchi's counsel made no objection to Pettingill serving as the vocational expert. Pettingill gave the following answer to the ALJ's inquiry:

> Q: Mr. Pettingill, can you please describe the claimant's past relevant work in terms of exertional and skill level?
>
> A: Your Honor, Ms. Marchi worked in one occupation, during the relevant vocational period, as a personnel recruiter. Same as an employment recruiter. It's one in the same. The *DOT* number is 166.267-010.[2] That is skilled work, Your Honor, and it is customarily performed . . . at the sedentary exertional level.

Dkt. 4-5 at 50.

The Court finds that the ALJ properly considered the exertional level of Marchi's previous job according to SSR 82-62. The record contained sufficient evidence upon which to base a finding that Marchi was capable of performing her past relevant work, including the testimony of the vocational expert. Based on these facts, Marchi's argument fails. *See Goodwin v. Berryhill*, No. 4:17-CV-0202, 2018 WL 1225143, at *5 (S.D. Tex. Mar. 7, 2018) (rejecting claimant's argument based on SSR 82-62, where the ALJ's determination was based on his RFC determination, the DOT, and testimony of a vocational expert). *See also Deleon v. Colvin*, No. 7:14-CV-340, 2015 WL 12552003, at *20 (S.D. Tex. Sept. 22, 2015) (holding that "[t]here is no merit to Plaintiff's claim that the ALJ's findings regarding her past work were inadequate," when the ALJ's findings were "based on the [vocational expert's] expertise and . . . the ALJ's RFC determination"); *Leggett*, 67 F.3d at 565 ("The

---

[2] To determine how a job is generally performed in the national economy, "ALJs may take notice of job data in the Dictionary of Occupational Titles ('DOT'), which reflects the exertional requirements of a job as performed in the national economy." *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (citing 20 C.F.R. § 404.1566(d)(1)).

vocational expert's testimony . . . provided the basis upon which the ALJ could rely to determine that an appropriate [job] position exists for" the claimant.).

## V. CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that Marchi's Motion for Summary Judgment (Dkt. 8) be DENIED, the Commissioner's Motion for Summary Judgment (Dkt. 9) be GRANTED, and the decision of the Administrative Law Judge be AFFIRMED.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 4th day of September, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE